SEARS, ROEBUCK AND COMPANY, a corporation, Appellant,

v.

Winifred M. GOUDIE, Appellee.

Winifred M. GOUDIE, Appellant,

v.

CLIMATE CONDITIONING CORPORATION, a corporation, Appellee.

Winifred M. GOUDIE, Appellant,

v.

SEARS, ROEBUCK AND COMPANY, a corporation, Appellee.

Nos. 5914, 5915 and 5887.

District of Columbia Court of Appeals.

Argued Feb. 24, 1972.

Decided May 12, 1972.

As Amended on Denial of Rehearings En Banc June 30, 1972.

9. *Id.*

10. D.C.Code 1967, § 16–2316(c) (Supp. IV, 1971).

11. *Id.* § 16–2318.

12. *Id.* § 16–2328(b).

13. *Id.* § 16–2330(b).

14. *Id.* § 16–2317(c).

15. *Id.* § 16–2316(c).

16. *Id.* § 16–2317(b).

George H. Eggers, Silver Spring, Md., for Sears, Roebuck and Co.

Winifred M. Goudie, pro se.

Calvin K. Ashland, Silver Spring, Md., with whom S. David Rubenstein, Irwin S. Landau, and Bruce Goldstein, Washington, D. C., were on the brief, for Climate Conditioning Corp.

Before NEBEKER, PAIR and YEAGLEY, Associate Judges.

NEBEKER, Associate Judge:

These appeals and cross-appeal present issues arising out of contractual agreements between Winifred M. Goudie (hereinafter Goudie) and Sears, Roebuck and Company (hereinafter Sears), and also between Goudie and Climate Conditioning Corporation (hereinafter Climate). Goudie contracted with Sears for the purchase and installation of a heating system including adequate furnaces and ductwork which would also be sufficient for later use in connection with air conditioning. The system was to be installed in a building owned by Goudie and used partially as a private residence for herself and partially as a coffeehouse by Cafe Galleries, Inc. (hereinafter Cafe), a corporation owned by Goudie. Subsequent contracts with both Sears and Climate provided for additional air-conditioning equipment suggested as being necessary for cooling the entire

building. Climate acted as a subcontractor for Sears in the installation work required under the Sears contracts and also as prime contractor in performing work under a separate contract with Goudie.

Sears and Climate brought separate actions for the amounts due and owing on the unpaid Goudie accounts. Goudie filed answers and counterclaims for damages in both actions alleging that the contracts had not been fulfilled. The counterclaim against Sears, asserting damages based on "her loss of business income", was dismissed because it was not brought by Cafe, which was deemed by the trial court to be the real party in interest. Goudie was later successful in reasserting a counterclaim against Sears when the two actions by Sears and Climate were joined for trial purposes.

The trial judge, sitting without a jury, awarded Goudie, as personal loss, $14,120 in damages as against Sears for replacement of the inadequate air-conditioning system, including necessary remodeling and renovation costs. This award was offset by a finding for Sears that Goudie must pay $933.39 due and owing on account. Goudie was denied relief from Sears for business loss (relating to Cafe) and for punitive damages based on asserted fraud, litigation delay and obstruction. The court found against Climate on its claim. Goudie, as an individual, was awarded $245 on her Climate counterclaim but business loss and punitive damages were denied. The trial court did, however, make tentative alternative findings as to the extent of the loss sustained by Goudie through Cafe in the event that Goudie should, on appeal, be found to have standing to assert the business loss.[1]

Sears has appealed the trial court's decision alleging principally that (1) the amended counterclaim asserted by Goudie against Sears was barred by the statute of limitations, and (2) that Goudie's counterclaim should not have been permitted because Goudie's subsequent remodeling, use of her own inadequate motor, and her signing of a maintenance agreement were acts which waived any rights under an implied warranty of fitness for purpose. Goudie has also appealed the trial court's decision as to both Sears and Climate contending that (1) under Superior Court Rule 17(a) she is the real party in interest and is therefore entitled to business loss suffered by her through Cafe, and (2) that because of fraud, denial of discovery, and frivolous delays in litigation she was entitled to punitive damages.

We hold that the dismissal of Goudie's original counterclaim against Sears was a provisional interlocutory order and subject to revision prior to the final judgment. We also hold that the trial judge did not abuse his discretion in allowing reinstatement of the original Sears counterclaim in the amended counterclaim notwithstanding that the time allowed by the statute of limitations had run before the filing of the amended counterclaim. New matters brought into issue in the amended counterclaim were not, however, brought within the prescribed time and can only be allowed to the extent that the award thereunder reflects recoupment as a defense to the claim made by Sears. On Goudie's cross-appeal against Sears and her appeal against Climate, we hold that the trial court should have also allowed Goudie's loss of business income arising from the breached contracts.

## Statute of Limitations and Assertions of the Counterclaim Against Sears

The first counterclaim asserted by Goudie against Sears was filed on July 3, 1966, and stated, "Plaintiff has failed to fulfill its contract with the Defendant, thereby causing *her loss of business income.*" [Emphasis supplied.] On December 13,

1. The amount of loss asserted in the counterclaim against Sears for Goudie's business loss through Cafe was found to be $8,272. The amount of business loss attributable to Climate was found to be $1,958.

1966, a Sears motion to dismiss was granted based on the fact that Goudie was counterclaiming as an individual for loss suffered by Cafe. On August 23, 1967, motions to reinstate and amend the counterclaim against Sears and to join both the Sears and Climate actions were filed by Goudie. This amended counterclaim, including later amendments, asserted not only Goudie's "loss of business income", but also personal loss and punitive damages. The amended counterclaim was allowed because "the [trial] Court believes it should exercise its discretion in favor of a trial on the merits on all issues."

Courts have held that the assertion of a counterclaim must be viewed as an affirmative cause of action and should therefore be tested apart from the primary claim in determining whether the statute of limitations would bar the counterclaim. In Durant v. Murdock, 3 App.D.C. 114 (1894), the court said:

> "[I]t is not the institution of a suit, but the exhibiting of a cause of action, that determines the application of the statute of limitations, whether it be by amendment of the declaration or bill of complaint, by addition of new and independent counts to a declaration, or by the interposition of a counter-claim by way of a plea of set-off, which may of itself be the foundation of a substantial judgment for the defendant." *Id.* at 126–127. [Morris, J., denying petition for rehearing.]

This statement is in accord with the generally accepted view that affirmative claims made by way of setoffs and counterclaims must be tested by the statute of limitations while recoupment sought only by way of defense is a right that continues in existence with the primary claim. Sullivan v. Hoover, 6 F.R.D. 513 (D.D.C.1947). *See*

*also* 20 Am.Jur.2d Counterclaim, Recoupment, Etc. §§ 6, 7, 8 (1965).

■ In the instant case, Goudie has asserted her claim of breach of contract both as a matter of defense (recoupment) and as an affirmative cause of action on counterclaim. To the extent that Goudie's claim went beyond matters of defense, it must be tested by the statute of limitations.

■ The law in this jurisdiction is clear that the statute of limitations in an action for breach of contract, including breach·of warranty, runs from the time of the breach or completion of the contract. Poole v. Terminix Co. of Maryland and Washington, Inc., 91 U.S.App.D.C. 287, 200 F.2d 746 (1952); Maddox v. Andy's Refrigeration & Motor Service Co., D.C.Mun.App., 160 A.2d 799 (1960). Sears claims that the three-year statute of limitations found in D.C.Code 1967, § 12–301, governing contracts, should apply to the instant case. However, Goudie contends that the four-year statute of limitations in D.C.Code 1967, § 28:2–725(1), regarding sales of goods, is controlling. Although Goudie's viewing these contracts as being covered by the sale provisions of the commercial code may have merit, the statute of limitations provision therein is not to be applied to actions that accrued prior to January 1, 1965. D.C.Code 1967, § 28:2–725(2), (4). The general three-year statute of limitations provision contained in section 12–301 is therefore appropriate.

■ As applied to the instant case, section 12–301 would bar a cause of action asserted in counterclaim which was brought more than three years after August 15, 1964, the most recent date of completion of any of the contracts.[2] Goudie's first counterclaim was brought in July of 1966 and sought "loss of business income."

---

2. The breach of contract involved in this case deals with Sears' implied warranty that it was providing adequate air-conditioning equipment for Goudie's building. Such guarantees were continuous, running through all Sears contracts which were ultimately completed prior to August 15, 1964. We have no occasion to disturb the trial court's findings regarding the existence of this warranty. *See* D.C.Code 1967, § 17–305(a).

Although this claim was later dismissed by the court, Goudie was successful in obtaining its reinstatement at a later date. The fact that the counterclaim for loss of business income was reinstated after the expiration of the statute of limitations does not affect the right to assert the claim because a counterclaim which is merely reinstated relates back to its original date. Super.Ct. Civ.Rule 15(c). *See, also* Dawn v. Stern Equipment Co., D.C.Mun.App., 134 A.2d 341 (1957); Nesbit v. Pollak, D.C.Mun. App., 80 A.2d 54 (1951). Whether or not Goudie was reasserting the same claim (loss of business income) or whether she had been diligently pursuing her cause of action[3] were matters which in the trial court's discretion could be considered in allowing the reinstatement of the counterclaim. We find no abuse of discretion in allowing reinstatement.[4]

■ Sears' contention that the original dismissal of the counterclaim should be res judicata and thus bar reinstatement of the counterclaim is without merit. Rule 54(b) of the Superior Court Rules of Civil Procedure provides in part:

"When more than one claim for relief is presented in an action, . . . [including counterclaims], the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, . . . the order or other form of decision is *subject to revision at any time before the entry of judgment* adjudicating all the claims and the rights and liabilities of all the parties." [Emphasis supplied.]

The dismissal of the counterclaim for loss of business income falls within the provisions of Rule 54(b) as an order "subject to revision" before the entry of judgment. Such orders are interlocutory in nature and are not final or subject to immediate appeal. Golden Commissary Corp. v. Shipley, D.C.Mun.App., 134 A.2d 324 (1957). Similarly, because such orders are not final, they cannot give rise to the asserted bar of res judicata in later proceedings in the case. *See* 6 Moore's Federal Practice ¶ 54.42 (2d ed. 1971). *See also* Republic of China v. American Express Co., 190 F.2d 334, 339 (2d Cir. 1951). It is only after final judgment has been rendered that prior provisional orders become effective as final orders, giving rise to appealability or a claim of res judicata. Here, the order dismissing the original counterclaim against Sears was revised, as Rule 54 allows, at the time the Sears and Climate cases were joined.

■ To the extent the counterclaim also stated a cause of action which was for the first time being asserted, it cannot relate back. Because Goudie's claim for personal loss (unrelated to her loss of business income) was brought after the statute of limitations had run, it was barred. However, because Goudie also asserted her claim as a matter of defense, the trial court's findings must be considered in granting Goudie recoupment. The trial court's award of damages against Sears for Goudie's personal loss, $14,120 for replacement of the unit and remodeling and renovation, should therefore be construed as a finding for Goudie on her defense against the claim by Sears for the amount due and owing on Goudie's account.[5] Thus this award is set aside, but the findings underlying it are sustained and by operation of law are treated as defeating the

---

3. *Cf.* Slater v. Cannon, D.C.Mun.App., 93 A.2d 92 (1952).

4. Whether ultimate relief was properly granted on the merits of the reinstated counterclaim is discussed, *infra*.

5. "[Recoupment] cannot . . . be used as a sword to accomplish a recovery against the plaintiff over and above plaintiff's claim where it [the counterclaim] is barred, as here, by the Statute of Limitations." Sullivan v. Hoover, 6 F.R.D. 513, 514 (D.D.C.1947).

amount allegedly due and owing on the account. Durant v. Murdock, *supra,* 3 App. D.C. at 125; Sullivan v. Hoover, *supra,* 6 F.R.D. at 513.

Goudie has also alleged that fraud in not obtaining proper building permits, denial of discovery, and deliberate delays in litigation should give rise to punitive damages. Because the evidence is not clear as to when these causes of action might have accrued, we will assume, without deciding, that Goudie's claim for punitive damages was timely brought under the statute of limitations. On the merits of those claims against Sears and Climate the record reveals that the trial court did not err in finding against Goudie.

### Goudie's Counterclaims for Loss of Business Income

■ The counterclaims originally asserted by Goudie sought "her loss of business income" and "financial loss resulting from business interruption." Because the contracts in question were executed by Goudie in her name for work to be done to the building she owned, the question of her being a real party in interest in this litigation is easily resolved in her favor. Moreover, Sears and Climate have both selected Goudie as the appropriate party to be sued for nonpayment under the contracts. Any defense of, or counterclaim for, breach of contract affecting Goudie could be asserted by her. The real question remaining is whether the particular business loss in this case was suffered by Goudie and was the natural consequence of the contractual breaches.

■ The law in this jurisdiction regarding the extent of damages allowable in a breach of contract has been recently articulated and is in conformity with the law of other jurisdictions. Fowler v. A & A Company, D.C.App., 262 A.2d 344 (1970).

In *Fowler* this court, quoting the following excerpt from Hadley v. Baxendale, 9 Exch. 341 (1854), in setting forth the appropriate standards to be applied in situations where possible collateral damages may have also resulted, said:

" 'When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.,* according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it.' " [Fowler v. A & A Co., *supra,* 262 A.2d at 349.]

Such damages may also extend to loss of business income or profits suffered through collateral contracts or from collateral sources if such damages were otherwise foreseeable and proved with certainty. 22 Am.Jur.2d Damages §§ 61–62 (1965).

■ The record herein reveals that Sears knew there was a business entity to be operated for profit as a coffeehouse in the two lower floors of the building.[6] Sears was aware that Goudie was in fact the person who operated the coffeehouse. She also allowed complete inspection of the premises and made available to Sears the architectural plans for remodeling which showed specifically that the lower floors were to be utilized for the business operations of a coffeehouse. Climate was similarly on notice as to the reasons Goudie desired air conditioning prior to making its separate contracts with Goudie inasmuch as Climate's agents had previously worked as installation subcontractors for Sears and were familiar with the project and Goudie's purposes. Both Sears and Climate should have reasonably contemplated that a

---

6. Goudie had discussed with Sears the alternatives in providing air conditioning for the two coffeehouse floors or merely for the lower floor until business picked up.

breach of contract in providing adequate air conditioning would result in loss of business income or profits in the operation of the coffeehouse.[7] This being true, liability would extend to all such consequences "whether they are actually foreseen or not . . . ." A. P. Woodson Company v. Sakran, D.C.Mun.App., 129 A.2d 175, 177 (1957). *See also* 11 Williston on Contracts, § 1344 at 228 (3d ed. 1968). In any event, the record reveals that both Sears and Climate were aware of the intentions of Goudie to continue her previous coffeehouse operations in the new facility.

■ The law also requires that any damages claimed must be proved with reasonable certainty.[8] The record reveals that Goudie provided extensive testimony regarding the loss of business suffered by Cafe during the warm months when the air conditioning proved to be inadequate to cool the coffeehouse. Her evidence included calculations as to the average dollar amounts spent by customers over the various years for which damages were claimed, an estimation based on Goudie's personal observations (and corroborated by a former waiter) relating to the number of customers who left the coffeehouse because of the heat, as well as weather statistics showing the number of "hot" days during the periods in question. These facts were utilized in calculating the overall loss of business suffered by Cafe. The result was then adjusted to reflect the amount of net profit lost which would have been paid entirely to Goudie as her income from the business.[9] Upon this showing of loss of business income, the trial court tentatively found "Goudie's method of computing loss of business [was] sufficiently precise to prove damages." We agree.

Although Goudie's proof of the actual amount of goodwill may have lacked mathematical precision, she adequately proved that some loss of goodwill had been suffered. The trial court's tentative finding in respect to goodwill is supported on the evidence submitted as to the actual amount of goodwill lost. *See* 38 Am.Jur.2d Goodwill § 24 (1968). *See also* Barrett Co. v. Panther Rubber Manufacturing Co., 24 F. 2d 329 (1st Cir. 1928); Stott v. Johnston, 36 Cal.2d 864, 229 P.2d 348 (1951).

The trial court in making tentative findings relating to Goudie's loss of business income found that Climate and Sears had both breached their respective contracts with Goudie so that the loss claimed for 1964 was to be divided equally between them. The trial court found that Goudie's duty to mitigate damages after unsuccessfully negotiating for repairs or adjustment with Sears and Climate prevented further

---

7. As the Restatement of Contracts, § 330 (1932) states:

"In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. *If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it;* otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury." [Emphasis supplied.]

8. *See* District News Co. v. Goldberg, D.C. Mun.App., 107 A.2d 375, 377 (1954); Stern v. Ace Wrecking Co., D.C.Mun. App., 38 A.2d 626, 627–628 (1944); M & R Contractors & Builders, Inc. v. Michael, 215 Md. 340, 138 A.2d 350 (1958). *See also* 5 Corbin on Contracts, §§ 1020–22 (1964).

9. *See* Tr. 322, 387. In addition, the record shows that Sears dealt with Goudie personally in much the same way as with a proprietor (Tr. 321–22). The entire relationship established privity with Goudie. Indeed, the record reveals that Sears frustrated an attempt made by Goudie's counsel to elaborate upon any relationship Sears may have had with Cafe in a corporate capacity as distinguished from Sears' personal dealings with Goudie (Tr. 323). Goudie's claim was for the loss of income that she personally suffered from a collateral source (Cafe corporation). Goudie did not seek damages on behalf of the corporation (*e. g.*, Erlich v. Glasner, 418 F.2d 226 (9th Cir. 1969)), nor did she seek to obtain relief for diminution of share value (*e. g.*, Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727 (3d Cir. 1970)).

loss of business income as to Climate [10] and limited the recovery as to Sears to the years 1964 and 1965. We conclude that these tentative findings of fact are supported by sufficient relevant and probative evidence and do not erroneously apportion the damages as found. Because Sears' claim of waiver is based on either Goudie's 1968 acts of remodeling or her signing of a maintenance agreement in late 1966, the merits of this claim need not be reached where the counterclaim successfully asserting damages for 1964 and 1965 was filed in July, 1966 prior to the alleged acts of waiver.

 Sears also claims that Goudie's use of her own air-conditioning motor in the system waived any rights she may have had under an implied warranty. However, the assurances made by Sears' agents that Goudie's motor was compatible with the cooling system negate this claim. We have examined the record in light of other claims made by the parties and we find them without merit.

We therefore set aside the holding of the trial court allowing Goudie's counterclaim for personal loss ($14,120) asserted after the running of the statute of limitations and limit Goudie's recovery to recoupment (negating Sears' award of $933.39 against Goudie). We also reverse the trial court's finding that Goudie should not have been allowed her loss of business income and remand with directions to enter judgment for Goudie under the tentative findings of the trial court, and in conformity with this opinion ($8,272 plus interest and costs against Sears and $1,958 plus interest and costs against Climate).

So ordered.

10. Although there is some ambiguity in the record and in Climate's brief as to when Goudie's duty to mitigate arose as to Climate, the trial court's tentative findings on damages relating to business loss clearly indicate that Goudie's duty to mitigate arose sometime between the summers of 1964 and 1965.