**COMPUTER DATA SYSTEMS, INC., Plaintiff,**

v.

**David KLEINBERG and National Database Software, Inc., Defendants.**

**Civ. A. No. 89–0868 (RCL).**

United States District Court, District of Columbia.

Dec. 21, 1990.

---

Michael F. Clayton, Ron N. Dreben, Morgan, Lewis & Bockius, Charles L. Eisen, Kirkpatrick & Lockhart, Washington, D.C., for plaintiff.

James T. Hosmer, Nixon & Vanderhye, Arlington, Va., for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

On March 31, 1989, Computer Data Systems, Inc. ("CDSI"), filed a complaint seek-

**12**

ing declaratory relief against David Kleinberg ("Kleinberg"), and National Database Software, Inc. ("NDS" or "defendants" if referred to jointly), alleging copyright infringement, misappropriation of trade secrets, and breach of duty and loyalty.

Defendants answered CDSI's complaint and asserted five counterclaims. Count I of the counterclaim alleges copyright infringement by CDSI in reproducing portions of the computer program CAD/COBOL allegedly belonging to Kleinberg and incorporating it into CDSI's own computer program, known as RETOOL.[1] Count II of defendants' counterclaim alleges fraud by CDSI in relation to two agreements between CDSI and Kleinberg: the H–CHART and X–REF Licensing Agreement ("Licensing Agreement"), Memorandum in Opposition to Plaintiff's Motion To Dismiss And/Or For Summary Judgment at exhibit 2 ("Defendants' Opposing Memorandum"), and the Employment Letter of August 5, 1985 ("Employment Agreement"). *Id.* at exhibit 4.[2] Count III alleges breach of contract claims with regard to the Employment and Licensing Agreements mentioned above. Regarding the Employment Agreement, defendants allege that GOI/CDSI failed to negotiate a royalty agreement for the CAD/COBOL program in good faith. As to the Licensing Agreement, defendants allege that GOI/CDSI wrongfully combined the H–CHART and X–REF programs with other software products, thereby discounting the royalties Kleinberg believed himself entitled to receive.

Count IV alleges that GOI/CDSI has engaged in unfair trade practices and unfair competition by selling defendants' copyrighted computer programs while falsely identifying them as belonging to CDSI. In

Count V, defendants allege that Kleinberg is the owner of the original work from which CDSI's RETOOL computer program was derived and seeks to have CDSI's copyright registration in RETOOL (U.S. Copyright Registration No. 356–572) declared void *ab initio.*

CDSI has moved pursuant to Rules 12(c) and 56 of the Federal Rules of Civil Procedure, for an order dismissing, or granting summary judgment on part of Count I, and all of Counts II, III, and V of defendants' counterclaims. CDSI has also moved for partial summary judgment for CDSI on Counts I and II of its complaint. Count I of CDSI's complaint seeks a declaratory judgment that CDSI owns all rights to RETOOL and that defendants' copyright registration for CAD/COBOL (U.S. Copyright Registration No. 292–752), is invalid and should be cancelled. Count II of CDSI's complaint alleges that defendants have infringed on CDSI's copyright in RETOOL because CDSI owns all rights to both RETOOL and CAD/COBOL by virtue of the work made for hire doctrine of 17 U.S.C. § 201(b) (1977).

For the reasons discussed below and pursuant to a separate order issued this date, the court will deny CDSI's motion to dismiss, or, in the alternative, for summary judgment on part of Count I of defendants' counterclaim. The court will grant CDSI's motion for summary judgment as to the fraud allegations in Count II of defendants' counterclaim as they relate to the Licensing Agreement and will deny CDSI's motion as it pertains to the fraud allegations involving the Employment Agreement. As to Count III, the court will grant in part and deny in part CDSI's motion for summary judgment as to defendants' breach of

---

**1.** Count I also alleges copyright infringement with regard to alterations allegedly made to Kleinberg's H–CHART and X–REF computer programs. CDSI's motion to dismiss or for summary judgment does not address this copyright infringement counterclaim.

**2.** The Employment Agreement and Licensing Agreement were executed on August 5, 1985; a third agreement, the Information and Inventions Agreement ("Inventions Agreement"), was fully executed on August 6, 1985. Memoran-

dum of Points and Authorities In Support Of Plaintiff's Motion For Dismissal Of, Or, Alternatively, Partial Summary Judgment at Exhibit 2. ("Plaintiff's Supporting Memorandum"). Together, the three agreements described the basic employment relationship between Kleinberg and Group Operations, Inc. ("GOI"). CDSI became the successor in interest to GOI's rights in relation to Kleinberg when CDSI bought GOI's assets in 1988.

contract counterclaim. So much of defendants' Count III counterclaim as involves alleged breaches of the Licensing Agreement which occurred before August 7, 1986, and of which defendants had notice will be dismissed as untimely filed. Those alleged breaches of the Licensing Agreement occurring on or after August 7, 1986 will not be dismissed. The court will also deny CDSI's motion for partial summary judgment on Counts I and II of its complaint.

## I. LEGAL STANDARDS.

Rule 12(c) of the Federal Rules of Civil Procedure provides that where matters outside the pleadings have been presented to and not excluded by the court, a motion for judgment on the pleadings "shall be treated as one for summary judgment" under Rule 56. Because matters outside the pleadings have been presented and not excluded by the court in the present case, CDSI's motion will be considered by the standards applicable to a Rule 56 motion for summary judgment.

The language of Rule 56(c), indicates that summary judgment is appropriate when examination of the record as a whole (pleadings, depositions, answers to interrogatories, admissions, and affidavits), reveals "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In examining the record as a whole, the court must view all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. ANALYSIS.

A. *Genuine Issues of Material Fact Exist as to Counts I and V of Defendants' · Counterclaim and Counts I and II of CDSI's Complaint Making Them Inappropriate for Summary Judgment.*

█ Application of Rule 56 to Count I of defendants' counterclaim leads the court to conclude that there are disputed issues of material fact which make summary judg-

ment inappropriate. CDSI asserts that as a result of the Employment Agreement and the Inventions Agreement, Mr. Kleinberg was an employee of GOI and that CAD/COBOL constitutes a "work made for hire" under 17 U.S.C. § 201(b) (1977). Section 201 explains the ownership of copyrights and copyrightable works. Section 201(a) and (b) provides:

(a) **Initial Ownership.**—Copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work.

(b) **Works Made for Hire.**—In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

Title 17 defines a "work made for hire" as "a work prepared by an employee within the scope of his or her employment ..." 17 U.S.C. § 101 (1977).

Although it appears from the evidence before the court that Kleinberg was an "employee" of GOI, the court does not have to resolve that issue at this time. Even if the court were to assume that Kleinberg was an employee of GOI, a genuine issue of material fact exists as to whether the parties agreed in the Employment Agreement to alter the ownership of the copyright rights in works produced by Kleinberg while employed by GOI. The pertinent provision in the Employment Agreement states:

If, while you [Kleinberg] are employed by us [GOI], you conceive of and develop any other computer software package you agree to transfer to us all of your rights, title and interest thereto *in exchange for a royalty to be negotiated between us* which shall be no less than three percent (3%) and no more than ten percent (10%) of our gross receipts from the sale and/or licensing of any such package. (emphasis added).

The emphasized clause in the above provision indicates that GOI did not automatically obtain the rights to computer software packages developed by Kleinberg while working for GOI. Instead, the clause suggests that Kleinberg and GOI expressly agreed that Kleinberg would retain rights in any computer programs he developed.

By the terms of its own agreement, GOI would have to negotiate a royalty agreement with Kleinberg in order to obtain rights in the CAD/COBOL computer program which Kleinberg developed while working for GOI. Although the Employment Agreement limited Kleinberg's rights in the future royalty agreements to between three and ten percent of the proceeds from the sale and/or licensing of programs produced by him, such limitation does not detract from the fact that Kleinberg did retain rights in the programs he developed under the Employment Agreement, including the CAD/COBOL program at issue here.

While normally the fruits of an employee's labors belong to the employer under the statute, Section 201(b) enables the parties to expressly change the work made for hire result. In the present case the existence of the express provision in the Employment Agreement raises a genuine issue of material fact as to whether the parties altered the work made for hire doctrine so as to make it inapplicable to Kleinberg's work. The provision appears to satisfy the technical requirements of 17 U.S.C. § 201(b) insofar as it is in the written agreement and signed by both Kleinberg and GOI. Moreover, because the provision gives Kleinberg some rights in computer programs which he conceived and developed while working for GOI, it also appears sufficient to satisfy the substantive requirements of Section 201(b). At the very least, the provision raises a genuine issue of material fact and summary judgment cannot be granted as to Count I of defendants' counterclaim.

Contributing to the court's determination that Count I of defendant's counterclaim is inappropriate for summary judgment is the ambiguity produced by paragraph two of the Inventions Agreement when read in conjunction with the Employment Agreement. Paragraph two of the boilerplate Inventions Agreement reads as follows:

2. The Employee agrees that any invention, improvement or discovery ... conceived by him/her while ... employed by the Company ... and directly related to the employee's work or to the fields of interest of the Company shall be the sole and exclusive property of the Company, and the Employee shall, upon the request of the Company, duly execute and deliver any and all assignments and such other papers as may be deemed necessary by the Company to vest the right, title, and interest in such inventions, improvements, and discoveries in the Company.

Plaintiff's Supporting Memorandum at Exhibit 2.

The Inventions Agreement was signed by GOI on August 6, 1985, and by Kleinberg on August 5, 1985, the same day he signed the Employment Agreement. Insofar as paragraph two states that inventions developed during employment "shall be the sole and exclusive property of the Company, and the Employee shall ... execute and deliver" the necessary papers to vest title in GOI, paragraph two is inconsistent with the Employment Agreement provision which requires negotiation of a royalty in order to transfer any rights from Kleinberg to GOI/CDSI. The inconsistent provisions create ambiguity as to the parties' intent regarding the work made for hire doctrine. Because these contract provisions are ambiguous, summary judgment is inappropriate. *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 682 (D.C.Cir.1985).

The existence of the express provision in the Employment Agreement and the ambiguity provided by paragraph two of the Inventions Agreement raise genuine issues of material fact as to the validity and rightful ownership of the CAD/COBOL and RETOOL copyrights (both parties obtained their respective copyrights after Kleinberg had stopped working for GOI) and whether CDSI infringed Kleinberg's copyright by allegedly reproducing parts of CAD/COBOL and incorporating it into RE-

TOOL. For the reasons just discussed, CDSI's motion to dismiss or for partial summary judgment on Count I of defendants' counterclaim will be denied.

CDSI's motion for summary judgment on Count V of defendants' counterclaim will also be denied. In Count V, defendants seek a declaratory judgment that CDSI's copyright in RETOOL is void insofar as it is allegedly derived from Kleinberg's CAD/COBOL copyright. Because resolution of Count V depends upon the resolution of the same material facts involved in Count I (which requires a determination as to which party owns the rights to CAD/CO-BOL), Count V is inappropriate for summary judgment.

In addition, CDSI's motion for partial summary judgment for CDSI on Counts I and II of its complaint is denied because resolution of those Counts also hinges on the same genuine issues of material fact involved in Counts I and V of defendants' counterclaim. The validity of CDSI's RE-TOOL copyright registration (Count I of plaintiff's complaint) and whether defendants have infringed on the RETOOL copyright (Count II) will turn on whether CDSI or Kleinberg owns the copyright in CAD/COBOL.

B. *The Statute of Limitations Bars Some of Defendants' Count III Counterclaims Relating to the Licensing Agreement.*

 CDSI moves to dismiss Counts II and III of defendants' counterclaims as time-barred under the applicable statutes of limitations. The question of whether an action is time-barred is procedural in nature and is governed by the statute of limitations of the forum. *Hodge v. Southern R. Co.*, 415 A.2d 543 (D.C.1980); *see also Hoffa v. Fitzsimmons*, 673 F.2d 1345, 1360 (D.C.Cir.1982). The parties agree that District of Columbia law controls and that the statutory limitations period for both fraud and breach of contract claims is three years. D.C.Code Ann. § 12–301(7) & (8) (1981); *King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186 (D.C.1978) (fraud). In the District of Columbia, an action for breach of contract runs from the time of the breach or completion of the contract. *Sears, Roebuck and Co. v. Goudie*, 290 A.2d 826, 830 (D.C.) (en banc), *cert. denied*, 409 U.S. 1049, 93 S.Ct. 523, 34 L.Ed.2d 501 (1972). The limitations period for claims of fraud runs from the time the fraudulent act was or reasonably should have been discovered. *King v. Kitchen Magic, Inc.*, 391 A.2d 1184.

In Count II, defendants make two allegations of fraud: one regarding the Employment Agreement and one regarding the Licensing Agreement. In Count III, defendants make two breach of contract allegations: one regarding the Employment Agreement and one regarding the Licensing Agreement. The court will first address plaintiff's motion as to the fraud and breach of contract counterclaims regarding the Employment Agreement and will then address the fraud and breach of contract counterclaims relating to the Licensing Agreement.

1. Employment Agreement.

 Count II of defendants' counterclaim alleges that GOI defrauded Kleinberg because, at the time the Employment Agreement was executed, GOI did not intend to comply with the provisions requiring it to negotiate a royalty/licensing agreement in return for the transfer of rights to the software developed by Kleinberg. Count III alleges that GOI breached the Employment Agreement by failing to negotiate a royalty/licensing agreement for the CAD/COBOL program. Because the court finds that neither cause of action is time-barred, the motion as to the Employment Agreement counterclaims of Counts II and III will be denied.

CDSI asserts that the limitations period for filing the fraud and breach of contract counterclaims relating to the Employment Agreement had run against defendants because they filed their counterclaim on August 7, 1989, more than three years after Kleinberg tendered his resignation to GOI on July 11, 1986.

The facts relevant to this issue are set forth below. On July 11, 1986, Kleinberg "attempted to negotiate a royalty for

CAD/COBOL with Barry Murphy," an officer of GOI . . . and concluded, on the same day, that "a royalty agreement for CAD/COBOL was not forthcoming." Plaintiff's Statement of Material Fact As To Which There Is No Genuine Dispute at ¶¶ 12–13. Kleinberg submitted a resignation letter later that day. *Id.* at ¶ 14. Kleinberg indicated in his letter that his resignation would be effective thirty days later. *Id.* Kleinberg resigned thirty days later.

As set forth above, the statute of limitations for defendants' counterclaims is three years. Defendants filed their counterclaims on August 7, 1989, more than three years after Kleinberg submitted his resignation letter, but less than three years after Kleinberg's resignation became effective. The question here boils down to whether the statutory period began to run from the time GOI/CDSI allegedly refused to negotiate a royalty agreement for CAD/COBOL and Kleinberg submitted his resignation letter, or whether the period began to run thirty days after submission of the letter when Kleinberg made his resignation effective.

Assuming that GOI/CDSI's refusal to negotiate a royalty agreement for the CAD/COBOL program was an anticipatory breach, Kleinberg's suit was still timely filed. When one party anticipatorily repudiates a contract, District of Columbia law permits the other party to await performance by the repudiating party for a commercially reasonable time. D.C.Code § 28:2–610(a) (1981).

By waiting thirty days before making his resignation effective, Kleinberg acted in a commercially reasonable manner in accordance with District of Columbia law. If GOI/CDSI had anticipatorily breached the contract, which must be plaintiffs' position given their claim that the statutory period began to run as of July 11, 1986, then GOI/CDSI would have breached its contract with Kleinberg and Kleinberg had no obligation to wait thirty days before making his resignation effective. The court finds that in announcing his resignation and waiting thirty days to make his resig-

nation effective, Kleinberg acted in a commercially reasonable manner. The thirty day delay gave GOI/CDSI the opportunity to reconsider its position about negotiating a royalty agreement with Kleinberg for CAD/COBOL. Adding to the reasonableness of Kleinberg's thirty day wait is the fact that there was no set date for the negotiation of a royalty agreement. To start the statutory period running during what the court determines was a commercially reasonable waiting period would frustrate the purpose of D.C.Code § 28:2–610(a).

Alternatively, and assuming there was no anticipatory breach, the court also finds persuasive defendants' position that, in accordance with the contract terms, the effective date of Kleinberg's termination was thirty days after he gave written notice of his resignation to GOI. The Employment Agreement, by its own terms, provided that the party seeking to terminate the employment relationship "shall give the other at least thirty (30) days' [sic] written notice." Kleinberg's resignation letter complied with the contractual notice requirement and CDSI does not contest the effective date of Kleinberg's resignation.

Pursuant to the terms of the Employment Agreement, the limitations period for both the breach of contract and fraud claims regarding that agreement began to run on August 10, 1986, thirty days after Kleinberg tendered his resignation. Only as of August 10, could Kleinberg reasonably have known whether GOI may have been in breach of the Employment Agreement or whether GOI had fraudulently induced Kleinberg to enter into the Employment Agreement insofar as it only became apparent at that time that GOI was not going to negotiate a royalty agreement with him for the CAD/COBOL program. It was only as of August 10 that Kleinberg could have sued GOI for breach of contract or fraud because it was only on that date that Kleinberg could reasonably have been on notice that he in fact had a cause of action insofar as it became apparent that GOI/CDSI was not going to negotiate a royalty agreement and perhaps had never intended to do so. Because defendants

filed their counterclaim on August 7, 1989, within the three year limitations period, defendants' Count II and Count III counterclaims relating to the Employment Agreement are not time-barred.

### 2. Licensing Agreement.

■ In Count III of their counterclaim, defendants also allege that GOI/CDSI breached the Licensing Agreement with Kleinberg by discounting the royalties due Kleinberg by combining the H–CHART and X–REF programs with other GOI and CDSI software and selling those programs as part of a "package." [3] In order to determine when defendants' breach of contract claims relating to the Licensing Agreement "accrued" for statute of limitations purposes, the court must decide whether to treat each sale by GOI/CDSI separately or whether all the alleged package sales should be treated as an ongoing wrong.

■ Where a cause of action is based on wrongful activity occurring over a period of time, the claimant normally can recover damages only for the wrongful activity occurring within the statutory period. *See e.g. Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 502 n. 15, 88 S.Ct. 2224, 2236 n. 15, 20 L.Ed.2d 1231, *reh'g denied sub nom.* 393 U.S. 901, 89 S.Ct. 64, 21 L.Ed.2d 188 (1968). By contrast, under the "continuing tort" doctrine, a party "can recover for all damages resulting from all of defendant's wrongful conduct, provided any of it occurred within the statutory period." *Filloramo v. Johnston, Lemon & Co.*, 700 F.Supp. 572, 575 (D.D.C.1988).

The present case does not present a situation involving a continuing wrong. The injury Kleinberg complains of involved distinct economic harms which resulted each time X–REF and H–CHART may have been discounted by being sold in package form. *Compare Filloramo v. Johnston, Lemon & Co., Inc.*, 700 F.Supp. at 576

(each stock transaction treated as separate wrong for statute of limitations period because each resulted in separate injury) *with Page v. United States*, 729 F.2d 818 (D.C. Cir.1984) (ongoing drug treatment considered continuing tort).

In the present case, each allegedly wrongful sale constitutes a unique transaction or occurrence which stands on its own for statutory limitations purposes. Under the Licensing Agreement, Kleinberg was to receive royalties from the sale of H–CHART and X–REF, to be paid within thirty days of the end of each calendar quarter. From the documents submitted to the court, it appears that Kleinberg received notices regarding royalty payments on a monthly basis, beginning around May 13, 1986. Plaintiff's Supporting Memorandum at Exhibit 5; Defendants' Opposing Memorandum at Exhibit 10. The earliest royalty report presented to the court is dated May 13, 1986. Plaintiff's Supporting Memorandum at Exhibit 5. In his affidavit, Kleinberg alleges that he received his first monthly royalty report in mid–1986 and that he did not learn that his software had been discounted in a package until early 1987. Affidavit of David Kleinberg at ¶ 37 (filed October 10, 1989). The May 13, 1986 royalty report clearly indicates that the X–REF and H–CHART programs were sold as part of a package, thereby putting Kleinberg on notice of a potential breach as of the date he received that report.

■ The statutory period for each allegedly wrongful sale began when Kleinberg knew or should have known that GOI/CDSI had breached the Licensing Agreement. Defendants are entitled to sue for damages, if any, for all alleged breaches of which they had notice occurring within the statutory period dating back three years from the time defendants filed their joint Answer and Counterclaim on August 7, 1989.[4] To the extent that

---

**3.** CDSI contends that that part of count II of defendants' counterclaim which alleges fraud by CDSI in regards to the Licensing Agreement should be dismissed as barred by the three year statute of limitations. Because the count II fraud allegation relating to the Licensing Agreement is disposed of in part C below, the court will not address it here.

**4.** The counterclaims with regard to the Licensing Agreement are not compulsory insofar as they assert a cause of action unrelated to those raised by CDSI in the complaint. Because they

Count III of defendants' counterclaim involves breach of contract claims pertaining to the Licensing Agreement which fall outside the statutory period, CDSI's motion for summary judgment will be granted for each sale of which Kleinberg had notice that the sale may have been wrongful. The court notes that not all of the notices describe whether the X–REF or H–CHART programs were sold as part of a package or otherwise discounted. Only those sales of which Kleinberg was put on notice, by the royalty reports or otherwise, of potential breaches of the Licensing Agreement occurring prior to August 7, 1986, will be dismissed.

C. *Count II of Defendants' Counterclaim as it Relates to the Licensing Agreement Must Be Dismissed Because it Fails to State a Claim Upon Which Relief Can be Granted.*

■■■ CDSI moves to dismiss that part of Count II of defendants' counterclaim which relates to the Licensing Agreement for failing to adequately allege a cause of action in fraud. The essential elements of fraud are: "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action . . . taken in reliance upon the representation." *Bennett v. Kiggins,* 377 A.2d 57, 59 (D.C.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). The District of Columbia Court of Appeals stated that a party

> pleading fraud must allege such facts as will reveal the existence of all the requisite elements of fraud. Facts which will enable the court to draw an inference of fraud must be alleged, and allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient.

*Id.* at 59–60.

As it pertains to the Licensing Agreement, Count II of defendants' counterclaim fails to plead the elements of fraud with

sufficient particularity to overcome CDSI's motion to dismiss. In Count II, defendants allege that:

61. GOI, through its authorized representative Murphy, also made material false representations to Mr. Kleinberg regarding the compensation he could anticipate receiving as a result of his consulting work with GOI and the ultimate royalties attainable, not only through the original H–CHART and X–REF agreement, but also through any agreements to be negotiated for other independently created work such as CAD/COBOL.

62. The actions by Mr. Murphy and GOI constitute fraud as it relates to the inducement and performance of the H–CHART and X–REF license agreement and the August 5, 1985 consulting agreement and have caused substantial injury and great damage to defendants Kleinberg and NDS.

This claim of fraud is the type of mere allegation in the form of a conclusion which the Court of Appeals in *Bennett* found unacceptable. Unlike the fraud counterclaim with regard to the Employment Agreement, the above language is the sole reference to fraud relating to the Licensing Agreement. Defendants' counterclaim fails to allege any facts to establish a false representation in reference to any material fact and fails to even allege knowing falsity by GOI/CDSI. As such, CDSI's motion for summary judgment on Count II of defendants' fraud counterclaim, insofar as it relates to the Licensing Agreement, will be granted.

A separate order will be issued this date.

## ORDER

This case comes before the court on plaintiff's Rule 12(c) and Rule 56 motion to dismiss, or, in the alternative, for summary judgment, on part of count I and all of counts II, III, and V of defendants' counterclaims and for partial summary judgment for plaintiff on counts I and II of its complaint. For the reasons discussed in

are not compulsory counterclaims, they do not "relate back" to toll the statute of limitations. *Sears, Roebuck and Co. v. Goudie,* 290 A.2d 826,

831 (D.C.1972) ("To the extent the counterclaim also stated a cause of action which was for the first time being asserted, it cannot relate back").

the accompanying Memorandum Opinion issued this date, it is HEREBY ORDERED that:

1. Plaintiff's motion to dismiss or, in the alternative, for summary judgment as to part of Count I of defendants' counterclaim alleging copyright infringement and wrongful incorporation is DENIED.

2. Plaintiff's motion as to Count V of defendants' counterclaim is DENIED.

3. Plaintiff's motion for summary judgment as to Count II of defendants' counterclaim alleging fraud is GRANTED insofar as it relates to the Licensing Agreement, and such allegations are hereby DISMISSED. Plaintiff's motion is DENIED insofar as it relates to the Employment Agreement.

4. Plaintiff's motion for summary judgment as to Count III of defendants' counterclaim is GRANTED IN PART and DENIED IN PART. So much of plaintiff's counterclaim as involves alleged breaches of the Licensing Agreement which occurred before August 7, 1986, and of which defendants had notice, are dismissed as untimely filed. The alleged breaches of the Licensing Agreement which occurred on or after August 7, 1986, are timely filed. The alleged breach of the Employment Agreement is also timely filed.

5. Plaintiff's motion for partial summary judgment on Counts I and II of its complaint is DENIED.

6. The Clerk will set a status conference at which the court will set a discovery cut-off and schedule further proceedings herein. The Clerk will also provide counsel with fact sheets regarding the court's mediation program, which counsel will be prepared to discuss at the status conference.

SO ORDERED.